**UNIONE FRATELLANZA CRATINESE v PICCIANO**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 14027   Decided Dec 17, 1934

Nicola & Horn, Cleveland, for plaintiff in error.

M. A. Picciano, Cleveland, for defendant in error.

## OPINION

**By LEVINE, J.**

There is a dispute in the evidence on one of the major points. In behalf of defendant in error ample evidence was introduced showing the clear and unequivocal promise on the part of the president of the Unione Fratellanza Cratinese acting for and in behalf of the corporation, to pay for the services to be rendered in the defense of one of its members, who was at the time lodged in jail on a charge of homicide. The defendant in error proceeded to perform the services and completed the preparation of the case. The trial was set for May 16, 1933. One day before the date of trial, the president of the society, for the first time told defendant in error that the society had been advised by a lawyer that it had no right to pay money out of its treasury for the defense of one of its members.

Defendant in error then informed the president of the society that he had finished the preparation of the case; that the trial was set for the following day; that he could not possibly get a continuance; that he would be compelled to proceed with the defense of the case.

Mr. Picciano, defendant in error, testified that the president of the society told him on May 7, 1933, "We just had a special meeting about raising money for Petti's defense. Everybody was in favor of helping him, so go right ahead with the case and don't worry about the money—we will pay you the $500.00 about Tuesday, because we have to get the officers to sign to get the money out of the bank."

The plaintiff in error offered evidence to the effect that what the president of the society told Mr. Picciano was that Michelarcangelo Petti, who was charged with homicide, applied to the society for a loan of $500.00; that a special meeting was held and that all but one voted for the granting of the loan. The president of the society denied that he told Mr. Picciano to go ahead with the defense and that the society had promised to pay for it. This issue of fact is, of course, important.

The trial court, sitting as a jury, had the best opportunity to determine the weight to be given to the testimony of each witness. He chose to believe defendant in error and his witnesses. It will be noted that the bill of exceptions is in narrative form and does not contain all the evidence which was offered at the trial. The certificate of the trial judge to the bill of exceptions does not state that the bill contains all the evidence. We must, therefore, assume, insofar as the weight of the evidence is concerned, that the trial court had ample evidence before it, plus ample opportunity to determine the weight to be given it. We must assume that the version given by defendant in error and his witnesses was properly accepted and believed by the trial court to be the true version. No claim for reversal therefore can be predicated on the ground that the judgment is manifestly against the weight of the evidence.

We are relegated to but one question, namely: Has the president authority to make a contract in behalf of the society to pay attorney fees for the defense of one of its members in view of the by-laws and the charter of the corporation.

We are referred to a translation of Article 14 of the by-laws of the society:

"Article 14. The society funds cannot be touched for any reason except for the payment of benefits to sick members; administrative expenses exceeding the monthly receipts and extraordinary expenses, must be voted by the general assembly (of the society)."

We are also referred to the Articles of Incorporation which limits the benefits which the society may pay to members. Amongst others, "is the assisting financially its members in sickness and distress."

It is urged in behalf of plaintiff in error

that the defense of one of its members who is incarcerated on a criminal charge does not come within the term "distress" and that by-law 14 above quoted clearly excludes any such assistance. It is in effect the defense of "ultra vires."

The general Corporation Act, §8623-8 GC, starts with the sentence:

"Every corporation of this state heretofore or hereafter organized shall have the capacity possessed by natural persons. * * *. The articles shall constitute an agreement by the directors and officers of the corporation that they will confine the acts of the corporation to those acts which are authorized by the statement of purposes and within such limitations and restrictions as may be imposed by the articles.

No limitation on the exercise of the authority of the corporation shall be asserted in any action between the corporation and any person except by and on behalf of the corporation, against a director or an officer or a person having actual knowledge of such limitation."

This last provision follows substantially §7 of the Uniform Act and abandons the common law rule of "ultra vires." It is in harmony with the tendency of modern times to allow a corporation general capacity to do everything in every way as an individual, where no public interest or policy is specially involved.

The theory of the law seems to be to enlarge the authority of the corporation to do all acts which individual persons may do. The outside world has a right to rely upon the acts of the officers of the corporation and to assume that when they act in behalf of the corporation they do so with full authority. The outsider is under no duty to examine the charter or the by-laws of the corporation. All he needs to know is that the person dealing with him is a properly constituted officer of the corporation. If the officer exceeds his authority in dealing with other persons who have no knowledge of any limitations upon his authority, he is in turn answerable to the corporation for his wrongful acts but the corporation is bound by the acts of its officers acting in its behalf as far as it effects persons outside of the corporation.

It is contended that the provisions above cited relate only to corporations for profit and that the plaintiff in error is a society not for profit; that the limitation on the exercise of authority of the officers of a corporation not for profit still obtains. In other words, that the common law doctrine of "ultra vires" may still be asserted as a defense if the officers of a corporation not for profit exceed their authority.

While the new Corporation Act still retains the distinction between corporations for profit and corporations not for profit, yet it will be seen that the provisions of the Corporation Act dealing with corporations not for profit and commencing with §8623-97 GC are a part and parcel of the chapter of the General Code denominated "General Corporation Act."

Sec 8623-8 GC which does away with the "ultra vires" doctrine states that:

"Every corporation of this State * * *."

It does not say "Every corporation for profit" but includes every corporation coming within the purview of the Corporation Act.

We can see no reason why the legislative intent should be different in the different classes of corporations insofar as the application of the ultra vires doctrine is concerned. The intent of the legislature is clear insofar as §8623-8 GC which eliminates the ultra vires doctrine, is concerned. It seeks to hold the corporation liable for the acts of its officers regardless of whether they did or did not exceed their authority. Strangers dealing with such officers of the corporation have a right to assume that the officers are acting within the scope of their authority and the corporation is therefore bound to such strangers who have no knowledge of any limitations upon the authority of the officers or the capacity of the corporation to do certain acts. The officers of the corporation, however, who have exceeded their authority are held responsible in a civil action to the corporation as such. The elimination of the doctrine of "ultra vires" was the result of long experience. It was found that many frauds were perpetrated upon innocent strangers who dealt with officers of corporations in good faith and thereafter found that the officers exceeded their authority or that the corporation had no power to do certain acts. Such fraudulent practice became impossible under the present state of the law which holds the corporation responsible for the acts of its officers, regardless of the capacity of the corporation and regardless of the authority of the officers to do the acts in question. There is every emphatic reason why the beneficence of this change should include all corporations, a corporation for profit as well as corporations not for profit.

The recital of the present case tells, in itself, an eloquent story and is an added

reason why the contention of defendant in error, that no limitation on the exercise of authority of the corporation or its officers, can be asserted in this case between the corporation not for profit and the defendant in error. To permit this defense is to convert the law and its machinery into a vehicle of fraud.

Relying upon the statement of the president of the society that the society voted to pay for legal services in the defense of one of its members, defendant in error proceeded to prepare the case and did all that was demanded of him. The fact that one day before the trial the president of the society informed defendant in error that the society had been advised that it had no authority to pay for the legal services does not, in our opinion, make any difference. The contract was entered into by and between the society through its president and the defendant in error on May 7, 1933. It became a binding contract. Defendant in error was duty bound to perform the obligations incumbent upon him under said contract, namely, to prepare the case and to render legal services in defense of Michelarcangelo Petti.

We hold that Mr. Picciano, defendant in error, was not bound to inquire into the authority of the president or the capacity of the corporation to employ him in defense of one of its members. The corporation is bound by the acts of its president, even if unauthorized. It becomes bound to pay the fees agreed upon in the conversation between the president of the society and Mr. Picciano. If the president exceeded his authority or misrepresented the situation he is, in turn, answerable to the society for exceeding his authority.

Mention is made of the fact that an assignment was executed by Michelarcangelo Petti to Mr. Picciano upon some funds due to him from a bank in Italy. We do not consider it material as the same was not fully executed nor did anything materialize from said assignment.

We may say, before concluding, that there is much strength in the contention of Mr. Picciano that the charter of the corporation which permits assisting members in distress is broad enough to include the providing of funds for the defense of a member charged with a criminal offense, especially when it turned out that he was not guilty of the offense.

"A laborer is worthy of his hire." We think that this admonition should be extended to include lawyers who faithfully perform their duty.

In view of the above considerations, we

hold that the Municipal Court of the City of Cleveland was correct in its judgment and the same will be affirmed.

Judgment affirmed.

HYNES, PJ, concurs in judgment.
LIEGHLEY, J, dissents.

### DISSENTING OPINION

By LIEGHLEY, J.

The defendant in error was plaintiff in the trial court and will be thus referred to herein. The plaintiff in error was defendant and will be referred to as defendant or Society.

Plaintiff brought an action to recover a judgment for attorney fees. The trial resulted in a judgment in his favor against defendant. Error is prosecuted to this court to reverse same.

During the early part of 1933 one Michelarcangelo Petti, as a result of some altercation, found himself in the county jail charged with murder in the second degree. Being a member of the Society and being without funds for his defense, he made application to the Society for a loan of Five Hundred Dollars with which to employ plaintiff as counsel. His application was considered on the 7th day of May, 1933, by the Society, and by a vote of fifty to one a resolution was adopted to make said loan to him, (a large number of members were not present.) Plaintiff claims that on this night, or the next day, the president of the Society advised him of the action of the Society and told him to go ahead and the money would be paid in a day or two.

The indictment against Petti was returned on the 9th of May and the trial set for the 16th. During the interim the president and other members consulted counsel and as a result of said consultation told plaintiff on May 15th, 1933, that the Society had no authority to make the loan to Petti by reason of the law of the State and the provisions of the Constitution and by-laws of the Society. Notwithstanding this information plaintiff decided to continue as counsel for Petti. The case was tried on the 16th and the services then rendered were included in the bill upon which suit was brought. Plaintiff claims that the president of the Society told him to go ahead with the case and the Society would pay him the money. This was denied by the president.

The facts having been found in favor of plaintiff by the trial court plaintiff claims that he is entitled to recover said judgment upon two grounds. In the first place, he

claims that the purpose clause of the Articles of Incorporation authorized such expenditure in behalf of one of its members as well as Article 14 of the Constitution and by-laws of the Society. In the second place, plaintiff claims that, if it be determined that such expenditure was not authorized in law or by the Constitution and by-laws, the Society must nevertheless pay for the reason that the defense of ultra vires has been denied to corporations under §8623-8 GC of the General Corporation Act.

Dealing with the first claim, the provisions of the purpose clause of the Articles of Incorporation of the defendant read as follows:

"promoting sociability among its members, cultivating patriotism and love of country, assisting financially its members in sickness and distress, and in case of death to assist families of deceased members by carrying on a fraternal benefit society as defined by §9462 GC without capital stock, solely for the mutual benefit of its members and their beneficiaries, and not for profit, having a lodge system with ritualistic form of work and representative form of government and providing for the payment of benefits in accordance with §9491 GC, which death benefits do not exceed the sum of $300.00 to any one person and disability benefits do not exceed $300.00 in any one year to any one person, and issuing no insurance certificates and exercising all the corporate powers conferred upon fraternal benefit societies by the General Code of Ohio in accordance therewith, and in accordance with the constitution, laws, rules and regulations of said corporation."

It should be specifically noted that the defendant is incorporated under §9462 et seq, GC, which sections authorize and empower a group of individuals to organize and incorporate a fraternal benefit society. The incorporators thereof limited the purpose for which moneys may be expended to the payment of benefits to sick members and expressed its purpose by Article 14 of its Constitution as follows:

"The society funds cannot be touched for any reason except for the payment of benefits to sickmembers; administration expenses exceeding the monthly receipts and extraordinary expenses must be voted by the general assembly (of the society)."

However, plaintiff predicates his claim upon the words "sickness and distress" contained in the purpose clause of the Articles. With this claim we do not agree. The sickness and distress contemplated by such an organization as defendant is generally limited to necessaries of life, such as food, clothing and shelter. It certainly does not, in the absence of express language to the contrary, include attorney fees incurred in the defense of one of its members charged with homicide. Especially is this true in view of the fact that the State law commands and requires the appointment of counsel at the expense of the State for the defense of indigent prisoners. A member is not in distress for funds to employ counsel when counsel is readily available by law.

As stated above plaintiff claims that even though his authorization to proceed as counsel for Petti by the president was unauthorized by the Society, the Society is nevertheless liable by reason of the fact that the General Corporation Act by subsection 8 thereof has taken from all corporations the right to interpose the defense of ultra vires to a claim of a third party without knowledge.

The General Corporation Act may be found in the Code from §8623-1 to §8623-138 GC, inclusive. The pertinent parts of §8623-8 GC upon which plaintiff relies follow:

"Every corporation of this state, heretofore or hereafter organized, shall have the capacity possessed by natural persons to perform all acts, within or without this state.

"The articles shall constitute an agreement by the directors and officers with the corporation that they will confine the acts of the corporation to those acts which are authorized by the statement of purposes and within such limitation and restrictions as may be imposed by the articles.

"No limitation on the exercise of the authority of the corporation shall be asserted in any action between the corporation and any person, except by or on behalf of the corporation against a director or an officer or a person having actual knowledge of such limitation."

The General Corporation Act received §§8623-1 to 8623-138, GC, inclusive. By the terms of §1, §§8623-1 to 8623-138, GC, inclusive, shall be known and cited as the General Corporation Act and as so constituted is to be referred to as "this act."

The incorporation of corporations for profit and their powers and regulations is covered by §§8623-1 to 8623-96 GC. Corporations not for profit are likewise covered by §§8623-97 to 8623-138 GC. Whether

or not the words "every corporation" used in §8 thereof refers to both corporations for profit and not for profit, it is not necessary for us to decide in this case, although the question was raised and seriously urged as decisive.

This Society was undoubtedly organized and incorporated under §9462 GC et seq. Its purpose clause for the most part adopts the language of §9462 GC. This chapter of the Code denominated "Fraternal Insurance", §§9462 to 9509 GC inclusive, deals exclusively with the organization of fraternal benefit societies, such as this defendant. §9465 GC provides that such Society shall be governed by this Act, the Insurance Act. Such societies could be organized and incorporated and conducted under the powers conferred by this chapter to the exclusion of the General Corporation act and would be authorized and empowered to continue even though the general Corporation Act were repealed.

Secs 9462 to 9509 GC, constitute a special provision in the General Code for the incorporation of a designated class. This chapter is limited in its operation to fraternal benefit societies and alone controls such societies. Such corporations shall be formed under this special chapter and not under the general corporation act. This is commanded by §8623-3 GC of the General Corporation Act, by the use of the following language: "provided that where the General Code makes special provision for the filing of articles of incorporation of designated classes of corporations, such corporation shall be formed under such provisions and not hereunder."

The above quotation should be sufficient justification for the statement that the defendant is controlled by sections of the General Code independent of the provisions of the General Corporation Act. The defense of ultra vires has not been denied to the defendant by §5623-8 GC.

The sections of the Code covering fraternal benefit societies are not only independent of and uncontrolled by the General Corporation Act, but are expressly exempted from its operation and control by the General Corporation Act itself.

For authority for the statement that this defendant is expressly exempted from the operation of the General Corporation Act, we refer to §8623-132 GC:

"When special provision is made in the General Code for the incorporation, organization, conduct or government of corporations formed for any specified purpose, this act shall not apply, but the special provision shall govern unless it clearly appears that the special provision is cumulative."

So that, having reached the conclusion that the plaintiff is not entitled to recover under either claim as a matter of law, the judgment should be reversed and final judgment entered for plaintiff in error.